J-A13012-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| RUTH M. POPE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ESTATE OF HOWARD POPE, | : | No. 1397 WDA 2017 |
| DECEASED, AND ANITA BURROUGHS | : | |

Appeal from the Order September 18, 2017
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD-14-7809-011

BEFORE: OLSON, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.: FILED AUGUST 8, 2018

Appellant, Ruth M. Pope, appeals from the order entered on September 18, 2017, where the trial court amended its final, August 29, 2017, order of court. We affirm.

The Master thoroughly summarized the underlying facts of this case and its recommendations regarding the equitable distribution of marital property:

[A.] HISTORY

[Appellant and Howard Pope (hereinafter "Husband")[1]] were married on June 26, 1982, and [Appellant] filed her complaint

_____

[1] Husband passed away on June 22, 2016. See Suggestion of Death, 6/23/16, at 1. We note that 23 Pa.C.S.A. § 3323(d.1) provides:

In the event one party dies during the course of divorce proceedings, no decree of divorce has been entered and grounds have been established as provided in subsection (g),

in divorce on September 9, 2014. There were no children born of the marriage although each party has adult children from a prior marriage.

At the time of trial, Husband was 81 years of age. Husband is retired from his employment from the Port Authority of Allegheny County. He is also receiving Social Security Retirement benefits as well as rental income from rental property he owns. Husband's 2014 federal income tax return indicated his gross income (which included his retirement, rental and Social Security income) was $45,234. Husband's net monthly income was determined to be $3,388 at the time of the support hearing.

At the time of trial, [Appellant] was 78 years of age. [Appellant's] source of income is her income from Social Security as well as her rental income from the rental property she owns. Her pension from AT&T was cashed in sometime after her retirement in 1997. At the time of the support hearing, [Appellant's] net monthly income was determined to be $1,020. Husband is paying $1,106.81 to [Appellant] as alimony pendente lite, plus $100 toward the arrears.

. . .

In 2012, Husband was diagnosed with a malignant neoplasm of the spinal cord (a cancerous tumor braided into his spinal cord).

. . .

[B.] MARITAL PROPERTY

The parties were able to stipulate to the following marital assets:

---

the parties' economic rights and obligations arising under the marriage shall be determined [under the Divorce Code] rather than under 20 Pa.C.S. (relating to decedents, estates and fiduciaries).

23 Pa.C.S.A. § 3323(d.1).

. . .

[1]. The value of [Appellant's] real estate at 3804 Mountain Road (Middle Alley), South Park, PA acquired by [Appellant] during the marriage is $30,000; it is entirely marital property.

[2]. [Appellant's] rental home at 2917A Overhill Street, South Park, PA is [Appellant's] premarital property; the increase in value of this property during the marriage is $6,000.

[3]. As of [September 26, 2014], the balance in Husband's PNC Money Market account …2308 was $1,000.33.

[4]. As of [September 26, 2014], Husband's PNC checking account …4171 had a balance of $2,821.22.

[5]. Husband has a NY Life IRA …8645, which has a cash surrender value of $8,959.03 as of [January 20, 2015].

[6]. Husband has a NY Life Whole Life insurance policy …4982, which has a face value of $50,000 and a cash surrender value of $32,165.86 as of [September 9, 2014].

[7]. Husband has a NY Life Whole Life insurance policy …9696, which has a face value of $50,000 and a cash surrender value of $29,591.24 as of [September 9, 2014].

[8]. [Appellant] has an American Equity IRA …3600 which has a contract value of $41,976.82 as of [January 23, 2015].

[9]. [Appellant] has a NY [L]ife Whole life insurance policy …4924, which has a face value of $50,000 and a cash surrender value of $28,098.41 as of [July 16, 2015].

[10]. [Appellant] owns a NY Life annuity …2401 on Husband's life which has a cash surrender value of $9,036.77 as of [February 21, 2016].

[11]. [Appellant's] Northwest Savings account …8198 had a balance of $934 as of April 2014.

[12]. [Appellant's] Northwest [Savings] checking account …1105 had a balance of $1,054.69 as of [September 24, 2014].

[13]. The parties acquired a riding mower with a value of $500 which is in Husband's possession.

[14]. The parties acquired a 1995 GMC Silverado truck with a value of $500 which is in Husband's possession.

[15]. Since [September 23, 2013, Appellant] withdrew a total of $11,184 from PNC account …2308. $5,510 was returned by the bank, leaving a balance of $5,674.

The parties' marital residence located at 3824 Mountain Road, South Park PA 15129 was owned by Husband prior to the marriage. Other than the transfer into the Howard Pope and Ruth M. Pope Irrevocable Catastrophic Illness Trust in March of 2014, the property has always remained in Husband's name. According to [Appellant's] real estate appraiser, James Audas, Sr., the value of the property as of the time of marriage was $44,500 and the value of the property as of the date near to the date of separation was $116,000. Mr. Audas opine[d] that the marital value of the property is $71,500.

When asked how he was able to ascertain the value of the real estate as of the date of marriage ([June 6, 1982]), Mr. Audas testified that since over 30 years has passed since the parties were married; no reliable databases exist from that time period with respect to the sales comparison approach, such as the multi-list database. As such, Mr. Audas utilized the Marshall and Swift database which is a service that tracks building trends in particular areas. Mr. Audas did testify that he did utilize the Multi-list database and the sales comparison approach with respect to the value of the property as of the time of separation.

Husband's appraiser, J. Matthew Barone, opined that the value of 3824 Mountain Road, South Park, PA 15129 as of the date of marriage was $65,000 and the value of the property as of the time of separation was $120,000. Thus, according to Mr. Barone, the marital value of 3824 Mountain Road is $55,000. Mr. Barone testified that he was able to utilize the

sales comparison approach in determining the value of the property from the date of marriage because his family has been in the real estate appraisal business for over forty years, and they have maintained an extensive Multi-list database for at least that time.

Given the fact that both experts' valuations from the date of separation were so close, and both utilized the sales comparison approach pursuant to the Multi-list database, it stands to reason that the Multi-list database is reliable. As Mr. Barone utilized the Multi-list database for both valuations, the Master believes his approach to be the most reliable. As such, the Master determines that the marital value of 3824 Mountain Road, South Park PA is $55,000.

Husband also owned another piece of real estate prior to the parties' marriage, known as 2893 Overhill Street, South Park PA 15129. This particular piece of real estate also contains a vacant lot of the same address with a different tax parcel number. [Appellant's] expert, Mr. Audas chose to appraise each parcel of real estate separately and Husband's expert, Mr. Barone, chose to appraise the vacant lot in conjunction with the property containing the building.

Mr. Audas testified that the vacant lot located at 2893 Overhill Street, South Park PA 15129 had a date of marriage value of $6,900, and its date of separation value was $18,000. Therefore, according to Mr. Audas, the marital value of the vacant lot at 2893 Overhill Street, South Park PA 15129 is $11,100. Mr. Audas further testified that the house located at 2893 Overhill Street, South Park PA 15129 had a date of marriage value of $34,500 and the date of separation value was $90,000, which would make the marital value of the real estate containing the house at 2893 Overhill Street, South Park PA 15129 to be $55,500. Mr. Audas testified that he utilized the same methodology that he applied with respect to 3824 Mountain Road in determining the date of marriage values for both pieces of property located at 2893 Overhill Street. This was the Marshall and Swift economic trending approach as no sales comparisons were available to him from over 30 years ago. Mr. Audas did utilize the Multi-list database and the sales comparison approach with respect to the present valuation of the property.

The Master notes that the comparable sales that Mr. Audas utilized with respect to the vacant lot were at least three times the size of the lot in question. Also, Mr. Audas did not appear to take this fact into consideration in his report as no adjustments for lot size appear to have been made. It also appears from the map of the property that ingress and egress to the house is by use of the vacant lot.

When Mr. Barone appraised 2893 Overhill Street, he did not separate the vacant lot from the lot containing the house bearing the same address. Mr. Barone testified that the date of marriage value of 2893 Overhill Street was $52,000 and the date of separation value was $75,000. As such, according to Mr. Barone, the marital value of 2893 Overhill Street is $23,000.

Given the reliability of the consistent use of the sales comparison approach to both the date of marriage and the date of separation values, the Master accepts Mr. Barone's valuation of the property. Also, the properties that Mr. Barone utilized for comparison were of similar lot size to 2893 Overhill Street. In the few cases where the comparison properties were not similar in lot size, Mr. Barone made the appropriate adjustments. As such, the marital value of 2893 Overhill Street is $23,000.

The parties own a piece of rental property located at 2900 Highland Road, South Park PA 15129. They purchased it during their marriage and it is entirely marital. Mr. Audas testified that he used two approaches in determining the value of the property. The first approach Mr. Audas utilized was the income producing approach. In using this approach, Mr. Audas opined that the property is valued at $112,050. The next approach utilized by Mr. Audas is the sales comparison approach wherein Mr. Audas values the property at $113,000. Mr. Barone utilized both the income producing approach and the sales comparison approach when he valued the property. On both occasions, Mr. Barone's valuation was $90,000. Given the fact that both appraisers' approaches in valuation of the property yielded nearly identical figures, it appears that both approaches are relatively reliable. As both appraisers appear to be reliable in their respective methodologies, an average between the methodologies would be just as reliable. Therefore, the value of the property

is $101,025 which is the average between both appraisers' valuations utilizing the sales comparison approach.

Lastly, with respect to real estate, the parties own a piece of real estate located at 1412 ½ Center Street. Mr. Barone values the property at $5,000 while Mr. Audas values the property at $17,000. Mr. Barone testified that the relatively low valuation was due to the distressed area where the property is located as well as the relatively poor condition of the property. Mr. Audas did acknowledge the fact that the property was in need of repairs, and despite this fact, he still values the property at $17,000. While one will never truly know what is the true value of a piece of property unless it sells, it does appear that Mr. Audas is too lofty in his expectations, and Mr. Barone is too pessimistic. Nevertheless, the parties cannot agree with respect to the valuation, as such; the most equitable approach is to average the valuations as set forth by the experts. Therefore, the value of 1412 ½ Center Street, for equitable distribution purposes is $11,000.

There also exists an annuity with EquiTrust Life Insurance Company held by the Additional Defendant, Anita Burroughs for the benefit of Husband. The account was created when Ms. Burroughs was appointed the agent for Husband pursuant to a power of attorney he created. Apparently, after Husband was diagnosed with a malignant neoplasm of the spinal cord there were issues with his mental faculties. Once Husband's medication was adjusted his mental capacity was no longer in question, and the need for Ms. Burroughs to act on his behalf presented itself no longer. Ms. Burroughs acted as Husband's agent pursuant to the power of attorney from May of 2013 through September of 2014. During this time, Ms. Burroughs began working with Mr. Catale to create an irrevocable catastrophic illness trust wherein Husband would become divested of his assets and become eligible for long-term care benefits through the Veteran's Administration. During this process Ms. Burroughs created the annuity as well as the accounts at Dollar Bank which are titled in her name, however, the accounts are marital accounts subject to equitable distribution. As of the time of separation, the Dollar Bank checking account had a balance of $56,010.85 and the Dollar Bank savings account had a balance of $1,064.26. The most recent balance of the annuity is $82,857.47. There was

also debt associated with the marriage. [Appellant] presented evidence ([Appellant's] exhibit H) that as of the time of separation the Bank of America account titled in [Appellant's] name had an outstanding balance of $10,969.80. [Appellant] also presented a statement from Prescription Center Plus that as of October 31, 2014 there was an outstanding balance of $28.00 for what appears to be prescriptions for [Appellant]. Pursuant to [the trial court's] order of court dated April 21, 2015, effective September 26, 2014, Husband was responsible for 75% of [Appellant's] unreimbursed medical expenses that exceeded $250 annually. Therefore, pursuant to the April 21, 2015 order of court, Husband is not responsible for this obligation.

[Appellant] presented evidence (Exhibit H) that prior to the parties' separation, [Appellant] had an outstanding balance with Dr. Kristal Izadorczyk in the amount of $1,007. As this obligation existed at the time of the parties' separation, it is a marital obligation.

[Appellant] presented what appears to be an AAA membership renewal. This is not a marital debt subject to equitable distribution. If [Appellant] chooses to continue her membership, then the cost of that membership falls to her.

[Appellant] also presented South Park School District real estate tax bills for three pieces of real estate. The first piece of real estate is 3804 Mountain Road which is titled in [Appellant's] name and was purchased during the marriage. The statement was dated June 25, 2014 which indicated a balance of $741.84. As the statement predated the parties' separation, no credit is due. The same is true of the tax bills of the same date for the properties located at 2917(A) Overhill Avenue, and 2900 Highland Road in the amounts of $505.80 and $2,000.72 respectively.

[Appellant] also presented evidence (exhibit H) which indicated that the parties had an outstanding IRS obligation from the tax year 2012 in the amount of $12,951 as of July 14, 2014. At the time of trial, the parties learned that their amended 2012 tax return had been accepted by the IRS and instead of the parties owing the IRS; they were now due a refund in the amount of $1,244.28.

Husband presented copies of checks for various bills paid by him. (Husband's exhibit 11). After reviewing the exhibit in its entirety, it appears that all of the payments made by Husband predated the parties' stipulated date of separation as such; no credit will be given to Husband.

According to the order of court dated April 21, 2015, [Appellant] was held responsible for all expenses related to 3824 Mountain Road. Husband presented evidence (exhibit 15) indicating that he paid the real estate taxes for the property. However, [Appellant's] obligation to pay the expenses associated with the property, pursuant to the order of court, began September 26, 2014[,]which was the date the order was effective. Therefore, after a more complete review of exhibit 15, it appears that Husband is entitled to credit in the amount of $383.13 for the taxes he paid for the county taxes for the year 2015.

While Husband is not entitled to be entirely reimbursed for the expenses paid by him prior to the effective date of the support order, he is entitled to be reimbursed by [Appellant] for her share of the obligations that the parties shared after separation. In other words, Husband paid $1,972.27 in real estate taxes on September 11, 2014, and he is entitled to be reimbursed $986.13. As the parties were joint owners of the property, they share jointly in the obligations associated with the property. Also, since the parties separated, Husband paid the insurance for the property located at 2900 Highland Avenue in the amount of $707, therefore; he is entitled to be reimbursed $353.50. Husband paid $412.55 to the County of Allegheny for the 2015 taxes for 2900 Road, as such; he is entitled to be reimbursed $210.78. Husband also paid $335.60 in utility bills for the parties' rental property on May 7, 2015, (exhibit 16) therefore, he is entitled to be reimbursed $167.80.

In addition to the expenses previously mentioned, Husband presented additional evidence (exhibit 12) wherein he paid for certain repairs and real estate taxes after the parties separated. Husband paid $320 for roof repairs to 1416 ½ Center Avenue, $64.10 for window cleaning, and $2,200.79 for school district taxes for the property located at 2900 Highland Avenue, and $106.75 for outstanding refuse at the marital residence. Husband paid a total of $2,691.64 of which

he is entitled to be reimbursed $1,345.82. In total, Husband is entitled to be reimbursed $3,447.16, which represents [Appellant's] obligations pursuant to the support order as well as her obligations toward the expenses associated with the property advanced by Husband after the parties' separation.

[C]. EQUITABLE DISTRIBUTION OF MARITAL PROPERTY

Even though both parties were previously married, this is a long marriage of over 32 years. Both parties are advanced in age, and their ages are relatively similar. Although Husband's health is worse than [Appellant's], Husband's separate premarital assets compensate for the difference. Given the parties' respective ages and sources of income, neither has the advantage with respect to the future acquisition of capital assets and income.

In view of the foregoing, the Master recommends an equal division of assets and debts. This means that both parties must receive assets valued at $262,592.92 and pay debts of $7,902.79. As previously mentioned Husband has already paid some of the parties' marital debt which totaled $2,691.64, and is entitled to be reimbursed $1,345.82 for [Appellant's] portion of these debts. In addition, Husband paid debts which [Appellant] was obligated to pay pursuant to the order of court dated April 21, 2015, and is entitled to receive $2,101.34 from [Appellant]. In order to achieve this result, the Master recommends the following allocation of assets and debts:

. . .

[Appellant] is awarded the following marital property:

| | |
|---|---|
| 2900 Highland Road | $101,025.00 |
| 3804 Mountain Road | $30,000.00 |
| 2917(A) Overhill Street | $6,000.00 |
| Husband's NY Life whole life policy …4982 | $32,165.86 |
| The American Equity IRA …3600 | $41,976.82 |

| | |
|---|---|
| The NY Life whole life policy …4924 | $28,098.41 |
| The NY Life annuity …2401 | $9,036.77 |
| The Northwest Savings …8198 | $934.00 |
| The Northwest Checking account …1105 | $1,054.69 |
| Subtotal (Assets to [Appellant]) | $261,291.55 |
| Less [Appellant's] share of Marital Debts | $7,902.79 |
| Subtotal | $253,388.76 |
| Less reimbursement to Husband for [Appellant's] obligations paid by him | $2,145.80 |
| NET TOTAL TO [APPELLANT] | $251,242.97 |

With respect to the $2,145.80 [Appellant] owes Husband, this amount shall first be offset by any existing APL arrears owed by Husband. The remaining difference between the aforementioned $2,145.80 shall be reduced from Husband's NY Life whole life policy [Appellant] is receiving.

[Appellant] shall also receive 50% of the marital portion of Husband's defined benefit pension he is receiving from the Port Authority. [Appellant's] counsel shall prepare the Qualified Domestic Relations Order.

Husband shall receive the following marital property:

| | |
|---|---|
| The Marital share of 3824 Mountain Road | $55,000.00 |
| The Marital share of 2893 Overhill Street | $23,000.00 |
| The PNC Money Market account …2308 | $1,000.33 |
| The PNC Checking Account …4171 | $2,821.22 |
| The NY Life IRA | $29,591.24 |
| The Riding Mower | $500.00 |

| | |
|---|---|
| The 1995 GMC Silverado | $500.00 |
| The PNC Checking account …8263 | $2,589.88 |
| The Dollar Bank Trust checking account | $56,010.85 |
| The Dollar Bank Trust savings account | $1,064.26 |
| The EquiTrust Annuity | $82,857.47 |
| Subtotal (assets) | $263,894.28 |
| Less Husband's share of marital debts | $7,902.79 |
| Plus reimbursement from [Appellant] for debts advanced by Husband | $2,145.80 |
| TOTAL TO HUSBAND | $258,137.29 |

Each party shall pay their own respective counsel fees.

. . .

Other than already indicated, each party shall retain whatever property is in their possession.

The parties shall sign their respective affidavits of consent and waivers of notice so a divorce decree may issue.

Master's Report and Recommendation, 5/24/16, at 2-11 and 14-15 (some internal capitalization and paragraphing omitted).

Appellant filed her exceptions to the Master's Report and Recommendation on June 10, 2016. On August 29, 2017, the trial court denied Appellant's exceptions for the most part; however, the trial court granted two particular exceptions: one that essentially corrected a clerical error in the Master's Report and the other that corrected the Master's "failure to reduce the value of the real estate." See Trial Court Order, 8/29/17, at 1-

- 12 -

7. Excluding these two corrections, the trial court accepted the Master's Report and Recommendation and entered a final order based upon the Report and Recommendation. Id. at 7. The trial court slightly amended its August 29, 2017 order on September 18, 2017 and, on September 27, 2017, Appellant filed a timely notice of appeal. Trial Court Order, 9/18/17, at 1; Notice of Appeal, 9/27/17, at 1.

Appellant raises eight claims on appeal:

1. Did the trial court err in refusing to reopen the record to consider changed circumstances after the death of Husband[?]

2. Did the trial court err in denying [Appellant's] exceptions to the master's rulings on the admission of evidence at the hearing and permitting Husband's "testimony" by summary during the master's hearing[?]

3. Did the trial court [err] by failing to recognize [Appellant's] contribution to preserving the marital estate in her Orphan's Court action by not skewing the distribution in her favor or awarding her attorney fees[?]

4. Did the trial court err in failing to consider the tax consequences of the respective retirement assets it awarded to Husband and [Appellant][?]

5. Did the trial court err in determining that a 50-50 split of assets and debts were appropriate in this case[?]

6. Did the trial court err in failing to award attorney fees to [Appellant] in the divorce action[?]

7. Did the trial court err in refusing to consider Husband's APL arrears in fashioning its award to [Appellant][?]

8. Did the trial court err mathematically in calculating the amounts due to [Appellant] as a result of its [equitable distribution] order[?]

Appellant's Brief at 11-12.

We have reviewed the briefs of the parties, the relevant law, the certified record, the notes of testimony, and the opinion of the able trial court judge, the Honorable Mark V. Tranquilli. We conclude that there has been no error in this case and that Judge Tranquilli's December 1, 2017 opinion and August 29, 2017 order meticulously and accurately dispose of Appellant's issues on appeal. Therefore, we affirm on the basis of Judge Tranquilli's thorough opinion and order and adopt them as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Tranquilli's December 1, 2017 opinion and August 29, 2017 order.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/08/2018

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| RUTH POPE, | ) | FAMILY DIVISION |
| | ) | |
| Plaintiff, | ) | No. FD 14-007809-011 |
| | ) | |
| vs. | ) | |
| | ) | |
| HOWARD POPE, | ) | |
| | ) | |
| Defendant, | ) | |
| vs. | ) | |
| | ) | |
| ANITA BURROUGHS, | ) | |
| | ) | |
| Defendant, | ) | |

## ORDER OF COURT

AND NOW, this _29_ of August 2017, upon consideration of Wife's Exceptions

to the Master's Report and Recommendation dated May 24, 2016 and oral argument

thereon argued on April 28, 2017 it is hereby ORDERED, ADJUDGED and DECREED:

1. The Plaintiff argues sixteen (16) claims of error in her Modified Brief in Support

of Exceptions filed on April 26, 2017.[1] Argument on Exception letter K was omitted in

Plaintiff's Modified Brief and Exception letter P was withdrawn. Therefore, neither will

be addressed by this Court and/or are deemed denied. As some of the remaining claims

are related they will be consolidated by the Court for convenience and clarity.

---

[1] The Plaintiff was instructed to file a modified brief due to the fact that the original Brief in Support of
Exceptions filed on January 20, 2017 was forty-five (45) pages long. This exceeded the twenty-five (25)
page limit set forth in the Allegheny County Court Manual for the Adult Section of the Family Division of
the Court of Common Pleas, Section III, N, 5.

2. Exception letter A is denied. Wife asserts that the Master committed error by misstating the stipulation entered into by the parties regarding PNC Account x2308. The stipulation dealt with $11,184 in funds that were withdrawn by Wife during the marriage between September of 2013 and February of 2014. The parties disagreed as to the purpose for withdrawing the funds. Husband argued that he was owed a credit and Wife argued that the money was used to pay marital debts.[2] The Master clearly found Wife credible, as evidenced by that fact that Husband was not awarded a credit for the $11,184. Furthermore, the stipulated value[3] was included as part of the marital estate and was awarded to Husband in the distribution. Thus, this Court finds no basis for Wife's assertion that the Master committed any error and finds no abuse of discretion in his findings regarding this stipulation.

3. Exceptions lettered B, G and H all assert a claim of error by the Master for failing to distribute marital property and/or assigning an incorrect value to a marital asset. Letter B specifically contends that the Master failed to distribute 1416 ½ Center Street valued at $11,000.[4] Letters G and H address error regarding a NY Life IRA and a Whole Life NY Life Insurance Policy. The value of these assets were stipulated to at trial as $8,959.03 and $29,591.24 respectively.[5]

It is clear from reading the Master's Recommended Award in Section G of the Report and Recommendation that the property located at 1416 ½ Center Street is not listed in the column of either party. However, upon closer examination of the award to

[2] March 8 & 9, 2016 Equitable Distribution Trial Transcript pages 286-290.
[3] PNC acct. x2308 balance of $1000.33; Number 4 of Stipulations filed on May 24, 2016.
[4] The Court notes that the Master's Report and Recommendation incorrectly refers to this property as 1412 ½ Center Street.
[5] Stipulations filed May 24, 2016.

Wife, it is evident that the $11,000 *value* of the property was in fact allocated to Wife monetarily despite the fact that it is not delineated in the column of assets. A calculation of the listed assets and values reflected in the award to Wife equals $250,291.55; however the Master's subtotal is $261,291.55; a difference of exactly $11,000.

The same holds true for the NY Life IRA and Whole Life Insurance Policy assets. The actual value of the assets *listed* in Husband's column is $254,935.25 not $263,894.28 as subtotaled by the Master. The difference between these subtotals is $8,959.03, the exact value of the NY Life IRA. Thus, after closely reviewing the distributions to Husband, the Court finds that both of these assets were in fact monetarily distributed to Husband but the Master erred in detailing the award. He did so by allocating the value of the Life Insurance Policy ($29,591.24) while incorrectly titling it as the NY Life IRA, and similarly listing the IRA asset while failing to detail its value ($8,959.03) in the distribution.

As such the Court GRANTS Wife's Exceptions in part having found that the Master erred in how it detailed the award. The Court finds that 1416 ½ Center Street was awarded to Wife and the NY Life IRA and Whole Life NY Life Insurance Policy were awarded to Husband. However, because the value of the above referenced assets were awarded to the parties in the Master's Recommendation and Report, the error does not create a need to recalculate the distribution.

Exception C is denied. The pertinent exhibits for this Exception are Wife's Exhibits H and O. Exhibit H represents various bills one of which is a 2012 tax bill of $12,951 comprised of a $10,376 tax debt and $2,575 in penalties and interest. Wife testified that the IRS had seized one of her bank accounts in an effort to recoup this debt.

No evidentiary proof was offered by Wife regarding the seized bank account. Exhibit O is an amended 2012 tax bill which indicates that the interests and penalties were removed, the tax debt was reduced to $1,359 and Wife would be receiving a refund of $1,244.28. Although the Master did not attribute 50% of this marital debt to Husband the Court does not find an abuse of discretion as Wife is receiving the entire refund, by virtue of the fact that it was not included as part of the marital estate.

4. Exceptions D and E and J are denied. The Master took considerable time reviewing the numerous exhibits presented by the parties regarding debts and requests for credits. As the parties owned several properties jointly the Master did not err in attributing responsibility to both parties for debts on those properties; as the joint obligation does not cease upon separation. Thus Husband was entitled to a credit from Wife for her share of debt paid by Husband. Moreover, Wife provided no statutory or case law to support that she is not responsible for expenses on a jointly owned rental property as claimed in Exception E.

5. Exceptions lettered F and I both allege error by the Master in failing to consider statutes §3502(a)(10.1) and (10.2) which requires a court to consider the tax ramifications of distributed assets and expenses involved in the sale, transfer or liquidation associated with a particular asset, which need not be immediate or certain; in this case, real estate and the IRA retirement assets. The statutes cited above are factors to be considered by a court in fashioning a fair and equitable distribution of a marital estate. The reasoning is that these types of assets have specific costs associated with liquidation and consideration of these expenses will reflect a more accurate value. *Balicki v. Balicki*, 4 A3d 654, 664 (Pa.Super. 2010).

Wife's Exception F, assigning error to the Master's failure to reduce the value of the real estate is GRANTED. The real property awarded to the parties shall be reduced by the commonly practiced 7% rate for cost of sale (6% real estate commission and 1% transfer tax) and is hereby attributed with the following values:

a. 2900 Highland Road - $93,953.25

b. 3804 Mountain Road - $27,900

c. 2917(A) Overhill Street - $5,580

d. 3824 Mountain Road (Marital Share) - $51,150

e. 2893 Overhill Street (Marital Share) -$21,390

Wife's Exception I, which argues error based on the Master's failure to consider the tax effect of the IRA awarded to Wife is DENIED. Unlike, real property where the tax ramifications are established and predictable, a retirement asset requires consideration of various factors, including but not limited to, a party's age, taxable income and tax liability. In this case Wife did not offer testimony, evidence, methodology or a proposal to the Master on how the prospective tax ramification of the IRA should be calculated. Therefore, the Master did not error in in failing to consider the tax effect of this asset as the necessary evidence was not presented for consideration.

6. Wife's Exception L is DENIED. The relevant factors for deciding the equitable distribution of a marital estate are found in Title 23 §3502(a)(1-11) and no one (1) factor is entitled to more weight than another. Wife's Exception "L" is that the Master failed to take into consideration Husband's substantial non-marital estate versus Wife's limited separate estate in his Recommendation. Despite this being her claim of error, the majority of Wife's brief argues that the Master erred by improperly considering

Husband's health condition and expenses which is not the claim of error.[6] Regardless of Wife's argument, the Master clearly considered the parties separate premarital assets, stating the same in Section D of his Recommendation, titled Equitable Distribution of Marital Property. He recognized that there was a difference in assets but in consideration of all pertinent factors, including but not limited to the ages of the parties, Wife's eligibility to receive a portion of Husband's pension and the stipulated health condition of Husband, he recommended that the marital estate be distributed equally. The Court finds no error or abuse of discretion in that determination.

7. Exceptions lettered M, N and O collectively claim error by Master in failing to award Wife counsel fees. They are DENIED.

8. Exception letter Q is DENIED.

9. Exception R contains an overall claim of error by the Master's rulings on the admission of evidence. At the outset, the Court notes that the convoluted argument for this Exception is six (6) pages long and it was difficult to determine specific claims of error. To the extent that the Court was able to decipher Plaintiff's argument it finds that she asserts the following error:

1. The Master's ruling on a Motion in Limine presented by Attorney Michel on behalf of Anita Burroughs and a Notice to Attend and Produce filed by Plaintiff.

2. The Master permitting Husband's direct testimony to be offered by summary over Wife's on-going objections.

---

[6] The health of a party is a proper statutory consideration. Although the Master was not presented with an outlook of Husband's future costs, it was both reasonable and appropriate for the Master to consider that Husband would incur unspecified medical costs in treating his cancer. Any other treatment would be inequitable.

3. The Master's ruling on testimony regarding property and money that was not subject to the marital estate.

4. The Master's ruling denying the admission of Husband's will.

10. Exception R, including but not limited to the claims outlined by the Court above, is DENIED. Wife makes overreaching arguments that the Master was ill-prepared to hear the case and/or understand the complexity of the facts and arguments. Wife equates an adverse ruling with a lack of understanding, and this Court simply does not agree. This was a two (2) day trial, fraught with more argument than testimony at times, and the record shows that the Master took great pains to crystalize the positions of both sides prior to making his rulings.

11. All other provisions of the Master's Report and Recommendation dated May 24, 2016 not inconsistent with this Order shall remain in effect and are made a Final Order of Court.

12. This constitutes a final order or decree. If applicable, this order or decree shall be entered as a judgment by the Office of Court Records. Rule 236 Notice to be issued by the Office of Court Records.

BY THE COURT:

_____, J.

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

RUTH POPE,

        Plaintiff

vs.

HOWARD POPE,   (deceased)

        Defendant,

vs.

ANITA BURROUGHS,

        Defendant,

**FAMILY DIVISION**

No. FD 14-007809-011
Superior Court #1397 WDA 2017

**OPINION
JUDGE MARK V. TRANQUILLI**

Copies served by first class mail upon:

Counsel for Plaintiff:

Barbara Shah, Esq.
5824 Library Road
Bethel Park, PA 15102

Counsel for Defendant Howard Pope:

Verdell Dean, Esq.
429 Forbes Ave.
Allegheny Building; Suite 1609
Pittsburgh, PA 15219

Counsel for Defendant Anita Burroughs:

Lisa Michel, Esq.
564 Forbes Avenue, Suite 1113
Pittsburgh, PA 15219

FILED

17 DEC -1 PM 3: 18

DEPT OF COURT RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY PA

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| RUTH POPE, | ) | FAMILY DIVISION |
| | ) | |
| Plaintiff, | ) | No. FD 14-007809-011 |
| | ) | Superior Court #1397 WDA 2017 |
| vs. | ) | |
| | ) | |
| HOWARD POPE, (deceased) | ) | |
| | ) | |
| Defendant, | ) | |
| vs. | ) | |
| | ) | |
| ANITA BURROUGHS, | ) | |
| | ) | |
| Defendant, | ) | |

## OPINION

**MARK V. TRANQUILLI, J.**                                November 30, 2017

The Plaintiff, hereinafter Wife, appeals from the August 29, 2017 Order on Exceptions and the September 15, 2017 Order entered on her Motion for Reconsideration. A timely Notice of Appeal was filed on September 27, 2017 and on October 5, 2017 Wife was ordered to file a Concise Statement of Matters Complained of on Appeal. A concise statement was filed on October 26, 2017 wherein Wife complains of eight (8) errors.

## RELEVANT HISTORY

The parties were married for thirty-two (32) years, having married on June 26, 1982 with a stipulated date of separation of September 9, 2014. It is uncontested that Husband was in poor health during the divorce litigation, having been diagnosed in 2012

1

with cancer of the spinal cord.[1] At the time of the equitable distribution trial Husband was eighty-one (81) years old, Wife was seventy-eight (78) and both parties were retired. This case was subject to considerable litigation, which included a simultaneous action initiated by Wife in Orphan's Court regarding a trust formed by the parties in November of 2013 that was to include marital assets. The Orphan's Court action was filed in April of 2014, five (5) months prior to Wife filing for divorce and while the parties were still living together. This action was resolved during the pendency of the divorce in July of 2015.[2]

On May 15, 2015, Husband's daughter, Anita Burroughs, was joined as an additional party to the divorce action as she served as Husband's Power of Attorney and was also a beneficiary of certain marital assets. By Order dated October 30, 2015, the Master was appointed to hear equitable distribution and a two (2) day trial took place on March 8 and 9, 2016. Master Chester Beattie issued a Report and Recommendation on May 24, 2016 and Wife filed Exceptions on June 10, 2016. On June 22, 2016 Husband passed away.[3] His death served as the basis for Wife presenting a Motion to Reopen the Record, which was denied on July 15, 2016 along with requests for other relief.

Briefs in support and opposition to Wife's Exceptions were continued numerous times at the request and consent of the parties and argument was eventually scheduled on April 28, 2017.[4] Due to the volume and complexity of the record and issues, the Court issued its Order on Exceptions on August 29, 2017. On September 15, 2017, Wife

---

[1] See Stipulations filed May 24, 2016. (Document 102)
[2] Orphans Court docket No. 2111 of 2014.
[3] See Suggestion of Death filed on June 23, 2016. (Document 108)
[4] See Consent Orders dated August 30, 2016, October 7, 2016, November 8, 2016 and February 3, 2017. (Document numbers: 114, 115, 116 and 118)

presented a Motion for Reconsideration of the August Order. It was denied, with the exception of correcting the value of a single property that had not been reduced to reflect the cost of sale consistent with the Court's August 29, 2017 Order.[5] It is from these last two (2) Orders that Wife has filed the present appeal.

## STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

Wife outlines eight (8) errors in her Concise Statement of Matters Complained of on Appeal. The Court entered a comprehensive Order on August 29, 2017 wherein it provided sufficient reasoning for many of the present matters complained of by Wife. To avoid redundancy, the Court incorporates the August 29, 2017 Order and, to the extent necessary to address remaining issues raised by Wife, the Court offers the following opinion.

The first complaint listed in Wife's Concise Statement is that the Court erred in refusing to reopen the record to consider changed circumstances after the death of Husband.[6] The relevant time line for this issue is as follows: the equitable distribution trial took place on March 8 and 9, 2016; the Master issued his Report and Recommendation on May 24, 2016; and Husband died on June 22, 2016. On July 15, 2016 Wife petitioned this Court to reopen the record due to Husband's death arguing that the value of certain marital property subject to distribution had changed and that the Master should reconsider his recommendation of a 50/50 distribution as the needs of the parties have likewise changed.

---

[5] See Order dated September 15, 2017. (Document 127)
[6] Wife's Motion to Reopen the Record, Continue Exceptions and for Special Relief dated July 15, 2016.

3

The standard for reviewing a Court's decision to deny a Petition to Re-Open the Record is abuse of discretion. *Aloi v. Aloi*, 445 A2d 815, 820 (Pa.Super. 1982). Neither at the presentation of the Motion to Reopen the Record, nor in her Concise Statement, did Wife provide any authority in support of her position that the record should be reopened. Granting Wife's motion would have served to allow her to relitigate equitable distribution: a matter which had been fully heard and decided by the Master. The parties were both alive at the time of trial and issuance of the Recommendation, with an expectation that the decision brought finality to the matter. The record does not support that the Court abused its authority in denying Wife's motion, and therefore should be affirmed.

Wife's second issue on appeal challenges the Court's denial of the Exceptions relative to the Master's evidentiary rulings. The admission or exclusion of evidence is within the sound discretion of the trial court, and a reversal should only occur upon a showing of abuse of discretion or error of law. *Zuk v. Zuk*, 55 A.3d 102 (Pa.Super.2012) "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id.*, citing *Jacobs v. Chatwani*, 922 A.2d 950, 960 (Pa.Super.2007), *appeal denied*, 595 Pa. 708, 938 A.2d 1053 (2007).

4

Specifically, Wife contends that the Court erred in denying her Exceptions to the Master's evidentiary rulings, and for permitting Husband's testimony to be summarized. The Court will address the latter issue first.

In Wife's Brief in Support of Exceptions she argued that she objected numerous times to Husband's summarized testimony because it was "clear" that the testimony was not his own, while simultaneously arguing that Husband was somehow not competent to testify.[7] Wife's claim that Husband was not competent as a witness should be dismissed as she did not challenge his competency to testify at trial. The only tangential argument regarding Husband's competency occurred in Wife's Modified Brief in Support of Exceptions, wherein she extrapolated that because Husband's counsel chose to summarize his testimony she must have questioned his competency and should have brought this to the Court's attention.[8] However, simply put, neither Wife nor Husband put the issue of his competency before the Court, after which a hearing would have taken place, with the burden on the challenging party to disestablish competency by clear and convincing evidence. *Commonwealth v. Boich*, 982 A.2d 102, 109-110 (Pa.Super.). As this issue was not properly raised it should be deemed waived and dismissed.

As to her argument that the Master erred in permitting Husband's testimony to be summarized, Wife does not demonstrate what prejudice she suffered as a result of this form of testimony. Husband was subject to cross examination by Wife and the Court sees no support for finding prejudice. Wife's boilerplate allegation of prejudice is insufficient to satisfy her burden on appeal and as such, should be dismissed.

---

[7] Plaintiff's Modified Brief in Support of Exceptions to the Master's Report and Recommendation, pg. 24.
[8] Plaintiff's Modified Brief, pg. 24

5.

As to the remaining evidentiary rulings detailed in this second appeal issue, the Court relies on its August 29, 2017 Order, specifically wherein it addresses Exception R in paragraphs nine (9) and ten (10). Additionally, the Court notes that Wife cites numerous transcript pages in her Concise Statement, the vast majority of which were not referenced at the time this Court ruled on the Exceptions and Motion for Reconsideration. To the contrary, the Court was left to surmise the bulk of Wife's complaints from a six (6) page protracted diatribe, which is not the Court's responsibility. Throughout the trial, Wife continued to argue her position that Husband and/or his family were trying to divest her of her share of the marital estate through the construction of the trust and the creation of his will. A review of the record shows that the Master either found this evidence irrelevant or not credible, and the Court found nothing in the record that would support that the Master abused his discretion in making those rulings, having the benefit of hearing the testimony first-hand. Furthermore, Wife did not demonstrate the prejudice necessary to constitute reversible error.

The remaining issues raised on appeal are associated with the equitable distribution award. It is well settled that the scope of review of an order for equitable distribution is limited and absent an abuse of discretion will not be disturbed. *Litmans v. Litmans*, 673 A2d 382, 386 (Pa.Super. 1996) citing, *Miller v. Miller*, 617 A2d 375 (Pa.Super. 1992). It is only if the trial court failed to follow proper procedure or misapplied the law that an abuse of discretion will be found. *Id.*

In her third complaint, Wife raises two (2) matters related to the Orphan's Court action she initiated. First, that the Court erred by failing to award her attorney fees for this action. Second, that it erred in failing to skew equitable distribution in her favor, as

6

she asserts the action was initiated to preserve the marital estate. At Exceptions, Wife argued that the Master made erroneous findings regarding the basis for the Orphan's Court case because he was somehow misinformed about the action itself. However, this allegation is belied by the record, which illustrates that the Master heard lengthy testimony from Brian Catale, the individual who advised and assisted in preparation of the trust formed in 2013. Based on this evidence the Master made a credibility determination that the trust was formed as part of a family decision to allow Husband to be eligible for veteran's medical benefits.[9] As the trust itself was formed in November 2013 and Wife initiated her Orphan's Court action approximately five (5) months prior to filing for divorce, the Court did not err in affirming the Master's Recommendation not to award counsel fees or skew the distribution based on this action to terminate the trust.

Wife was also denied counsel fees for the divorce action itself, and raises this as an issue for appeal, as detailed in claim number six (6). The standard of review for an award or denial of counsel fees is abuse of discretion. *Busse v. Busse*, 921 A.2d 1248 (Pa.Super. 2007), see also, *Litmans* at 390. Title 23 §3702 permits the Court to grant this *needs*-based relief. Considerations include the party's ability to pay, his/her financial resources, the value of the services and the property received in equitable distribution. *Id.* at 1258 (citing *Teodorski v. Teodorski*, 857 a.2d 194, 201 (Pa.Super. 2004). In reviewing the record, the Court finds no abuse of discretion in denying Wife's claim for counsel fees. Wife was receiving $1,106.81 in *alimony pendente lite* (APL), and the Master properly considered that the ultimate distribution to the parties provided sufficient assets to pay their respective counsel fees.

---

[9] Report and Recommendation of the Master, Section F "Wife's Counsel Fee Claim".

7

Issue four (4) asserts that the Court erred in failing to consider the tax consequences of retirement assets awarded to Husband and Wife. The Court recognizes that it must consider the economic circumstances of the parties at the time property distribution becomes effective, including "Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain." Title 23 Pa.C.S.A. § 3502(a)(10.1). The equitable distribution trial took place over a two (2) day period, and Wife does not cite any portion of the record where either party offered any evidence to the Master as to what the tax ramifications would be or any methodology for making such a determination. Thus, any awards premised upon tax ramifications would have been speculative, as an analysis would require consideration of various factors, including but not limited to, taxable income, tax bracket, tax rate and a party's age. As the Courts favor reasonable predictability over speculation, this Court did not err in affirming the Master's Recommendation in assigning a pre-tax value to these assets. *Smith v. Smith*, 659 A.2d 1259 at 1269 (Pa.Super. 1995); *Anzalone v. Anzalone*, 835 A.2d 773 at 782-783 (Pa.Super. 2003).

In her fifth claim of error, Wife asserts that the Court erred in determining that a fifty-fifty (50/50) split of the marital estate was appropriate. The Court sufficiently addressed this issue in its August 29, Order, and rests on the reasoning provided in paragraph number six (6) as to Wife's Exception L.

In her seventh complaint, Wife argues that the Master erred in refusing to consider Husband's APL arrears as part of the equitable distribution award. At the outset, the Court finds that this issue is waived as it was not raised in her Exceptions filed

8

on January 10, 2016, or within her Modified Brief filed on April 26, 2017. To the extent that it is reviewable the claim should be dismissed, as the Master did, in fact, provide for consideration for any outstanding APL arrearages in its award, as set forth below:

## G. Recommended Award:

**4. With respect to the $2,145.80 Wife owes Husband, this amount shall first be offset by any existing APL arrears owed by Husband. The remaining difference between the aforementioned $2,145.80 shall be reduced from Husband's NY Life whole life policy Wife is receiving.[10]**

The final appeal issue is that the Court made a mathematical error in calculating the award due Wife. However, this was not the issue raised in Exceptions and should be deemed waived. During Exceptions, Wife claimed that the Master erred in determining what was a marital debt and which party was entitled to a credit. It was only in her Motion for Reconsideration that Wife raised, for the first time, that the values of the debts and credits were miscalculated.[11] Thus, this Court did not have the opportunity to review the record at the time of Exceptions relative to this mathematical error. Valuation of the marital debt and credit is a separate issue that could have, and should have been raised at Exceptions, as Wife did regarding other assets, as noted in B, F, G, and I in her Exception Brief. However, to the extent that the Superior Court believes that Wife has properly raised a claim, this Court relies upon the reasoning in its August 29, 2017 Order.

---

[10] Report and Recommendation of the Master pg. 13-14.

[11] In its September 15, 2017 Order on the Motion for Reconsideration the Court acknowledged its own mathematical error found in the August 29th Order, which resulted in a single property to be reduced by $770.00. As the Motion for Reconsideration was the first opportunity to raise that particular error, the Court entered the appropriate Order.

9

For all the foregoing reasons, the Trial Court's rulings should be affirmed.


BY THE COURT,


_MJKGranville_ J.


10